UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Nathaniel Johnson,

    Plaintiff

v.

Officer Kelly et al.,

    Defendants

Case No.: 2:11-cv-1858-JAD-VCF

**Order & Judgment**
[##62, 70]

Pretrial detainee Nathaniel Johnson contends he was subjected to excessive force by Clark County Detention Center (CCDC) guards when he was handcuffed, pulled to the ground, and subdued with a knee in his back while being moved from general population to segregated housing. He sues the guards for excessive force and their supervisors for acquiescing in his constitutional deprivation by not disciplining the guards, and he claims he was deprived of procedural due process in the disciplinary hearing that followed the incident. Defendants move for summary judgment on all claims. I find that the record does not support Johnson's excessive-force claim against the guards or his deliberate-indifference claim against their supervisors, and that Johnson's procedural-due-process claim is barred by his failure to fully exhaust the CCDC's grievance procedures. Accordingly, I grant defendants' motions and enter summary judgment against Johnson on all claims.

**Background**

Nathaniel Johnson was a pretrial detainee in the CCDC in October 2011.[1] Johnson contends that he was having difficulty staying focused on preparing his criminal defense in his general-

---

[1] *See generally* Doc. 37 (amended complaint). I liberally construe all pro se motions and pleadings, including the documents that Johnson filed before retaining counsel. *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003); *see also* Doc. 45 (notice of appearance by attorney).

1

population module, so he asked to be placed in administrative segregation.[2] Officer Francisco Terriquez and Sgt. Patrick Kelly were the only guards working in the module that day. In response to Johnson's request to be moved to segregation, Terriquez told Johnson to pack his things, and he began to escort Johnson, handcuffed, through the general-population area where other, unsecured inmates were walking around.[3] Before they reached the exit door, Johnson was asked if he had any commissary items in his belongings because they are prohibited in segregation. Johnson admits he responded, "You run the MF, look for yourself."[4]

As the soundless video of the incident[5] shows, Terriquez then moved Johnson to face a wall near the exit to the module. Thirty seconds later, the officers pulled Johnson onto his stomach on the floor in a controlled maneuver and restrained him by placing pressure on his back using their knees as they kneeled over him on the ground. Back-up promptly arrived, Johnson was brought to his feet, and he was walked out of the module. The entire incident—from the moment the officers grabbed Johnson to when they released him—lasted approximately one minute and seven seconds.

Later that day, Johnson initiated an administrative-grievance process over his treatment by Kelly and Terriquez.[6] A Conduct Adjustment Board (CAB), consisting of Officer Daniel Varner and Officer Lee, brought Johnson in to address charges stemming from Johnson's behavior while in general population.[7] The CAB officers interviewed Johnson[8] and found him guilty of disrupting the module and refusing to accept his housing assignment.[9]

---

[2] Doc. 62 at 27; *see also* Doc. 70-1 at 52–53 (deposition transcript).

[3] The surveillance-video recording supports this fact. Doc. 62 at 57.

[4] Doc. 65 at 16.

[5] *Id.* at 57. The court carefully viewed the video (three times) with all counsel in the courtroom at the January 12, 2015, motion hearing and made detailed notes.

[6] Doc. 70-1 at 8.

[7] *Id.* at 12.

[8] *Id.* at 13.

[9] *Id.* at 14.

Johnson filed this civil rights action under 42 U.S.C.§ 1983 against defendants Kelly and Terriquez for excessive force and against their supervisors Lieutenant George Flippo, Captain Richard Suey, and Deputy Chief John Donahue for acquiescing in that excessive force and demonstrating deliberate indifference by not disciplining the guards for their treatment of him.[10] Johnson also sues Varner for violating his procedural-due-process rights by refusing to permit Johnson to call any witnesses in his defense at the disciplinary hearing and not retrieving the video tape of the incident before adjudicating the charge.[11]

Discovery has closed and defendants now move for summary judgment on all of Johnson's claims. They contend that Johnson cannot prove his excessive force claim because Kelly and Terriquez used only the force necessary to restrain him and prevent his hostile behavior to incite other unsecured inmates and they enjoy qualified immunity from his claims.[12] They argue that the supervisor-liability claim fails because the law does not entitle Johnson to a particular grievance-process outcome. Finally, they contend that the due-process claim against Varner is barred by Johnson's failure to properly exhaust his grievance on that issue, the evidence demonstrates that Varner accorded Johnson all process due and, regardless, Varner enjoys qualified immunity from suit.[13] I address each argument in turn.

**Discussion**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] When considering summary judgment, I view all facts and draws all inferences in the light most favorable to the nonmoving party.[15] If reasonable minds could differ on material facts,

---

[10] Doc. 37; Doc. 3 at 4–6, 8–9 (screening order).

[11] Doc. 37; Doc. 3 at 5–6.

[12] Doc. 62 at 11;

[13] Doc. 70.

[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[15] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

3

summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[16]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[17] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[18] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[19]

## I.     Excessive Force

The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment.[20] To resolve a pretrial detainee's excessive-force claims under the Due Process Clause, a trial court must balance a number of factors to determine "the reasonableness of the officers' actions given the circumstances."[21] The Ninth Circuit articulated these factors in *White v. Roper*: "(1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether force was applied in a good faith effort to maintain and restore discipline."[22] "A challenged

---

[16] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[18] *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[19] *Orr*, 285 F.3d at 773 (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[20] *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)); *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002).

[21] *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990) (citing *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987)).

[22] *Id.*

action . . . reasonably related to a legitimate government objective will not, without more, constitute punishment. Conversely, a court may infer an intent to punish when there is no such reasonable relation."[23] "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."[24] The lack of a serious injury is "relevant to the [constitutional] inquiry, but does not end it."[25]

Sgt. Kelly and Officer Terriquez contend their use of force against Johnson was reasonable because the detainee was behaving in a hostile manner and they wanted to ensure his actions did not incite the other unrestrained inmates in the module:

> Plaintiff was displaying hostility, defiance by yelling at the officers and using profanity. This conduct in a jail setting committed in the midst of over a dozen of unsecured inmates raises significant safety concerns to two unarmed correctional officers. Plaintiff could well incite the other inmates or require both officers' attention in order to enable one or more of the other inmates, who are capable of free movement within the module, to pose a safety or flight threat.
>
> . . .Sergeant Kelly prudently determined Plaintiff should be put down on the ground and be physically secured by Officer Terriquez alone until the movement officer arrived. Officer Terriquez was then able to maintain control of Plaintiff while keeping a watchful eye on the other inmates. Sergeant Kelly was also able to better monitor Plaintiff's level of security threat along with any posed from any other by not having to be physically engaged with Plaintiff.[26]

They conclude that this "use of force was indeed used in a good faith effort to maintain security and control in the module until Plaintiff was removed from it, per his own request."[27]

Not surprisingly, Johnson tells a different story. Johnson denies that he was yelling or using profanity, but he does acknowledge that his response to the inquiry into what belongings he was taking with him to segregation was "You run the MF, look for yourself."[28] The video recording of

---

[23] *Id.* at 1504.

[24] *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks omitted).

[25] *Id.*

[26] Doc. 62 at 11.

[27] *Id.*

[28] Doc. 64-2 at 13-14; Doc. 65 at 17–18.

5

the incident has no audio from which I can confirm either side's version of the verbal exchange. But in his deposition, Johnson confirmed that he meant by this aggressively defiant statement, "You run this motherfucking outfit, you check."[29]

Johnson offers no evidence to rebut the defendants' sworn statements that they restrained him in the manner they did because they were "concerned that [his] conduct and constant verbal abuse could have incited the [other] inmates" or created another "safety concern for both staff and inmates."[30] In the video, another inmate can be seen walking near Johnson's bundle of belongings while he was restrained, corroborating defendants' claim that there were other unrestrained inmates in the area. The video also confirms the defendants' assertion that "Sergeant Kelly and Officer Terriquez did not hit, kick or strike Plaintiff in any way" or "use any weapons or impact tools."[31] The only injury that Johnson claims to have suffered was pain in his ribs, and he testified that he "got real hot" and thought "he was going to pass out" while he was held on the ground.[32]

This evidence, construed in the light most favorable to Johnson, does not support his excessive-force claim. The level of force used, as apparent on the video of the incident and by the absence of serious injury, simply does rise to the level of excessive force necessary to state a constitutional violation.[33] Johnson has offered nothing to refute the guards' assertions that the force used was a necessary precautionary measure to maintain the safety and order of the module because Johnson was being verbally defiant. And the relationship between the situation the guards were presented with and the relatively low, non-injury-producing level of force they used with Johnson

---

[29] Doc. 65 at 16.

[30] Doc. 64-3 at 6 (answer #10); Doc. 64-4 at 5 (answer #9).

[31] Doc. 65 at 19-21.

[32] *Id.* at 20.

[33] *See White*, 901 F.2d at 1507 (affirming summary judgment and finding officers' subduing of pretrial detainee resulting in a cut wrist and bruises "all over his body" did not "establish that the use of force against him was 'excessive' and 'brutal'"). *Cf. Lolli v. Cnty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (finding genuine issues of fact precluded summary judgment on excessive force claim when pretrial detainee was pulled to the ground, surrounded by six officers, kicked in the back and upper torso, hit by a baton at least three times, handcuffed, pepper sprayed, and had his head beat against the pavement a dozen times).

does not demonstrate an unreasonable use of force. Because the officers' conduct was reasonable under the test articulated in *White*, I grant summary judgment in Officer Terriquez and Sgt. Kelly's favor on Johnson's first claim for excessive force.

**II.     Supervisor Liability/Deliberate Indifference**

Johnson's claims against supervisors Flippo, Suey, and Donahue are based on his theory that they acquiesced in Terriquez and Kelly's "unconstitutional use of force" by failing to take disciplinary action against these individuals in response to Johnson's grievances, thus demonstrating "deliberate indifference" to his safety.[34]

"A plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."[35] For such supervisor liability to attach, the defendant must have been personally involved in the constitutional deprivation or there must be a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.[36]

Even if I had concluded that there was a constitutionally violative use of force here, the record is devoid of evidence that these supervisor defendants were personally involved in the restraint of Johnson or any causal connection between Flippo, Suey, or Donahue and that use of force. Accordingly, summary judgment on plaintiff's claims against defendants Flippo, Suey, and Donahue is warranted, and I grant summary judgment against Johnson on his second and third claims.

**III.    Due Process and Administrative Exhaustion**

In his final claim, Johnson sues Officer Varner claiming this hearing officer violated his procedural-due-process rights by not permitting Johnson to call any witnesses and not reviewing the surveillance video in his disciplinary hearing for disrupting the module.[37] Officer Varner moves for

---

[34] Doc. 37 at 8–9.

[35] *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).

[36] *Id.*

[37] Doc. 37 at 9.

7

summary judgment on this due-process claim based on a handful of defects in the claim. Because I find that Johnson's failure to exhaust the grievance process on this claim is fatal to its success, I do not reach Varner's remaining arguments.

The Prison Litigation Reform Act of 1995 (PLRA) provides that no § 1983 action may be brought by any prisoner or pretrial detainee "until such administrative remedies as are available are exhausted."[38] Administrative exhaustion is an affirmative defense.[39] Prisoners must "exhaust all 'available' remedies, not just those that meet federal standards."[40] This is true even when a prisoner seeks relief that "cannot be granted by the administrative process."[41] The purpose is two-fold: (1) to give prisons opportunities to self-correct and to discourage disregard of their own procedures, and (2) promote efficiency because agency proceedings typically reach quicker, more economical resolutions than court proceedings.[42] As the Ninth Circuit explained in *Albino v. Baca*, "the defendant's burden is to prove there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."[43] "Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable."[44]

---

[38] *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("hold[ing] that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *see also Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014), *cert. denied sub nom. Scott v. Albino*, 2014 WL 3702544 (U.S. Oct. 20, 2014); 42 U.S.C. § 1997e(h) ("As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

[39] *Albino*, 747 F.3d at 1172 (discussing *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

[40] *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)) (writing that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory.").

[41] *See id.* (citation omitted).

[42] *Nunez v. Duncan*, 591 F.3d 1217, 1223 (9th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

[43] *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

[44] *Id.* at 1031 (citation omitted).

Officer Varner argues that Johnson could have administratively exhausted this claim by appealing it at two levels: first to the captain and second to the deputy chief or his designee.[45] Varner offers the facility's properly authenticated, written-grievance procedures, which confirm this two-level right to appeal a decision or sanctions issued by the CAB based on a "violation of inmate disciplinary procedure" or a claim that the inmate "can show himself not guilty."[46] Thus, these procedures squarely offered an opportunity for Johnson to argue the very issues he now bases this claim on.

Varner also demonstrates that Johnson "knew full well how to submit grievances up the chain of command as he did so with respect to the use of force issue."[47] The defense submits 12 pages of authenticated CCDC grievances that Johnson filed, including a grievance stating that Johnson "submitted a next level grievance to the deputy chief as required per instructions in the Clark County inmate handbook."[48] Johnson wrote that he was "attempting to go through the chain of command as required in the grievance procedure" and was "attempting to exhaust administrative remedy procedure as required by law."[49] There was plainly a grievance procedure in place and Johnson knew how to access it. With this evidence, the defendants have satisfied their burden to show that "there was an available administrative remedy,"[50] and the burden shifts to Johnson to show that administrative remedies were unavailable.

That Johnson's claim against Varner survived initial screening under the PLRA is of no consequence. The screening order is designed to filter out frivolous or malicious claims, failure to

---

[45] Doc. 70 at 21–22.

[46] Doc. 70-1 at 28-29 (§II).

[47] *Id.* at 22.

[48] Doc. 70-1 at 8, 16, 82–91.

[49] *Id.* at 84. In responding to this grievance, Sgt. Trotter wrote that a next-level grievance could be "handled at [his] level," without going to the deputy chief. *Id.* Regardless of which official was responsible to handle the grievance, this evidence demonstrates that a detainee-grievance procedure existed, Johnson accessed it, and CCDC officers responded to him.

[50] *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

9

state a claim, or attempts to obtain monetary relief from defendants immune from monetary relief.[51] The magistrate judge's screening order in this case neither addressed administrative exhaustion nor purported to adjudicate Johnson's claims on their merits.[52]  It is also not enough for Johnson to merely argue that the defendants "cite no evidence to show that administrative remedies have not been exhausted."[53]  Because Johnson has failed to show that administrative remedies were either satisfied or unavailable, he has failed to carry his burden.  I grant summary judgment in Officer Varner's favor on Johnson's fourth claim for failure to exhaust the CCDC's grievance process.

**Conclusion**

Accordingly, with good cause appearing and no reason for delay, it is hereby ORDERED, ADJUDGED, AND DECREED that defendants Kelly, Terriquez, Flippo, Suey, Donahue, and Varner's motions for summary judgment **[Docs. 62, 70] are GRANTED**.

**Judgment on all claims is hereby entered** in favor of the defendants and against the plaintiff.  The Clerk of Court is instructed to **CLOSE** this case.

DATED March 31, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[51] 28 U.S.C. § 1915A(b)(1)–(2).

[52] *See generally* Doc. 3.

[53] Doc. 73 at 14.